UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UGORJI O. UGORJI,

          Plaintiff,

     v.

NEW JERSEY ENVIRONMENTAL
INFRASTRUCTURE TRUST, et al.,

          Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 08-5424
        (JEI/JS)

**OPINION**

**APPEARANCES:**

THE LAW OFFICE OF C. GREGORY STEWART
By: Clifford G. Stewart, Esq.
535 Thirteenth Ave
Newark, NJ 07103
     Counsel for Plaintiff

OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
By: David Yi, Deputy Attorney General
RJ Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625
     Counsel for Defendants Briant, Hart, Scangarella

LECLAIR RYAN
By: Karol Corbin Walker, Esq.
     Jonathan D. Henry, Esq.
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102
     Counsel for Defendant New Jersey Environmental
Infrastructure Trust

**IRENAS**, Senior District Judge:

     Plaintiff is a United States citizen of Nigerian descent who

initiated this action against his employer, the New Jersey

1

Environmental Infrastructure Trust ("NJEIT"), and several of its officers, including Robert Briant, Sr., Chairman of the NJEIT Board of Trustees; Dennis Hart, NJEIT Executive Director; Frank Scangarella, NJEIT's Chief Operating Officer (collectively the "Individual Defendants").  Plaintiff seeks to recover for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Fourteenth Amendment's Equal Protection Clause.[1] Pending before the Court are Motions for Summary Judgment filed by Defendant NJEIT and by the Individual Defendants Briant, Hart, and Scangarella.[2]

## I.

Plaintiff first became an employee of NJEIT in 1996 as an Administrative Assistant 2 ("AA2") with an annual salary of $43,458.99.[3]  (Ind. Defs' 56.1 Stat. ¶¶ 16-17, 26.)[4]  To date, Plaintiff remains employed as an AA2 at NJEIT with an annual

---

[1]  The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

[2]  On March 8, 2012, Defendants jointly moved to strike Plaintiff's late-filed exhibits due to his repeated failure to comply with Court-ordered filing deadlines.  The Court will deny this Motion to Strike and consider the late-filed exhibits.

[3]  Plaintiff "bumped" into his position at NJEIT when his prior positions at the Department of Environmental Protection ("DEP") and the Green Acres Program were targeted for layoffs. (Ind. Defs' 56.1 Stat. ¶ 16.)

[4]  References to "Ind. Defs' 56.1 Stat." are to Defendants Briant, Hart, and Scangarella's statement of undisputed material facts submitted in support of their Motion.

salary of $77,863.84.  (*Id.* at ¶¶ 17, 19, 26.)  An AA2 "[a]ssists
a division director in a state department, institution, or agency
by performing and coordinating administrative support services;
does related work as required." (*Id.* ¶ 28).  This position
includes duties such as filing and scanning documents and
invoices, maintaining inventory, filing bank statements,
conducting seminar surveys, and performing vehicle maintenance.
(*Id.* ¶¶ 30-31.)  Plaintiff possesses a doctorate degree in
education administration and believes that his "skills and
experience were not being fully utilized" by the AA2 position,
which does not require a doctorate degree.  (*Id.* ¶¶ 32-33; Yi
Cert. Ex. B at 85-86.)

     On March 2, 2001, Plaintiff filed a Complaint with the New
Jersey Division of Civil Rights alleging employment
discrimination based on national origin against NJEIT.  (*Id.* ¶
34.)  On November 16, 2006, Plaintiff executed a Settlement
Agreement and Release, wherein Plaintiff agreed to withdraw his
Complaint and

          permanently waive and release any and all
          present and future claims that were brought,
          or could have been brought, by [Plaintiff]
          against the State of New Jersey or any of its
          departments, or components of such departments
          including specifically, but not exclusively,
          the [DEP], [NJEIT] and/or any of its
          employees, divisions and/or agents in
          connection with the above-captioned Verified
          Complaint, including, but not limited to,
          attorney's fees and costs, claims for monetary
          damages, back pay, compensatory time,

3

> grievances, unfair labor practices and/or discrimination or retaliation claims, in any forum.

(*Id.* ¶ 37; Yi Cert. Ex. 8.)  The Release included "all claims under Title VII of the Civil Rights Act" and "all claims involving any continuing effects of actions or practices which arose prior to the date of [the] General Release and bars the use in any way of any past action or practice in any subsequent claim."  (*Id.* ¶ 38.)

Following this 2006 settlement, Plaintiff alleges that he continued to experience discrimination with respect to the assignment of job duties and job titles.  Plaintiff claims he should have been assigned various human resource duties that were assigned to Trudy Edinger, and newsletter and annual report production duties that were assigned to John Laurita.  (*Id.* ¶¶ 45, 48.)  In addition, Plaintiff believed that he should have been given EEO/Affirmative Action and Trust Ethics Officer duties, which were assigned to NJEIT Chief Operating Officer, Defendant Scangarella.  (*Id.* ¶¶ 43-44, 48.)

In May 2007, Plaintiff sought and received additional duties from his supervisor, Defendant Scangarella.[5]  (*Id.* ¶ 38.)  In July and August 2007, Plaintiff discussed the possibility of reclassification and promotion, and Defendant Scangarella stated

---

[5]  These duties related to an emergency loan program, a financing program for septic tank replacement and a document retention plan.  (Ind. Defs' 56.1 Stat. ¶ 59.)

that he would support a reclassification if his daily job responsibilities merited it.  (*Id.* ¶¶ 61-62.)  Defendant Scangarella also informed Plaintiff that as an alternative to seeking a desk audit Plaintiff could provide him with additional information to support a reclassification request.  (*Id.* ¶¶ 67-68.)  Plaintiff declined this alternative.  (*Id.* ¶ 68.)

In January 2008, following a desk audit, the Department of Personnel ("DOP") issued a draft determination that Plaintiff's civil service title should be reclassified from AA2 to Administrative Analyst 1.[6]  (*Id.* ¶¶ 69.)  By letter dated February 13, 2008, NJEIT disagreed with the DOP determination and explained that Plaintiff "currently does not perform [the] functions [of an Administrative Analyst 1], they are not envisioned by [NJEIT] as to [sic] consistent with his current responsibilities, nor needed by [NJEIT] in its operations (or currently performed by others at [NJEIT])."  (*Id.* ¶ 71; Yi Cert. Ex. 12.)

Nevertheless, in a letter dated March 20, 2008, DOP reclassified Plaintiff's civil service title from AA2 to

---

[6]  The Administrative Analyst 1 position is defined as follows:  "Under supervision of a supervisory official in a state department, institution, or agency, performs duties of significant difficulty and/or supervises staff involved with review, analysis, and appraisal of current department administrative procedures, organization, and performance, and prepares recommendations for changes and/or revision therein; does related duties as required."  (Yi Cert. Ex. 11.)

Administrative Analyst 1.  (*Id.* ¶ 73.)   NJEIT continued to disagree with this determination, and edited Plaintiff's Performance Evaluation System ("PES") Agreement to provide greater detail regarding Plaintiff's responsibilities and work standards.  (*Id.* ¶ 74.)   After reviewing the revised PES Agreement, the DOP was satisfied that Plaintiff's assigned duties reflected his title as AA2 and reclassified him accordingly.[7] (*Id.* ¶ 77.)

In 2010, NJEIT offered Plaintiff the opportunity to draft its newsletters and its annual report; however, Plaintiff declined these opportunities.  (*Id.* ¶¶ 79-81.)   A second desk audit was ordered due to Plaintiff's insistence that his PES Agreement included duties covered by the Administrative Analyst 1 position.  (*Id.* ¶ 82.)   The second desk audit concluded that Plaintiff was appropriately classified as an AA2.  (*Id.* ¶ 83.) Plaintiff appealed this determination, and it was upheld by the Civil Service Commission in July, 2011.  (*Id.* ¶ 84.)

NJEIT and the Individual Defendants filed their Motions for Summary Judgment on December 9, 2011.

---

[7]   In a letter dated September 17, 2008, DOP noted that: NJEIT "chose to remove the duties associated with Administrative Analyst 1 and assign duties more appropriate to Administrative Assistant 2, in accordance with N.J.A.C. 4A:3-3.5c(1)."  (Yi Cert. Ex. 15.)

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"Summary judgment, of course, looks only to admissible evidence." *Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc.*, 826 F.2d 1335, 1339 (3d Cir. 1987); *see also Blackburn v. United Parcel*

*Service*, 179 F.3d 81, 95 (3d Cir. 1999)(noting that hearsay statements that are inadmissible at trial should not be considered when determining whether Plaintiff has established a triable issue of fact).

### III.

### A.

Count One of Plaintiff's Third Amended Complaint asserts a discrimination claim against NJEIT pursuant to Title VII. According to the Third Amended Complaint,

> NJEIT refused to address or investigate issues included in Dr. Urgorgi's many internal complaints and union grievances concerning allegations of disparate treatment and abusive conduct in the workplace by Mr. Scangarella. NJEIT's conduct was the cause of decisions denying Mr. Ugorgi a reclassification of his position, denying him an ergonomically sufficient workstation, an adjustment of his salary and other adverse employment actions.

(Third Amended Compl. ¶ 64.)

In support of its Motion for Summary Judgment, NJEIT argues that (1) it is not an employer within the meaning of Title VII and that (2) Plaintiff cannot establish an adverse employment action.

An employer within the meaning of Title VII is one who is "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 2000e(b).  Plaintiff does not dispute that NJEIT has

only thirteen employees, (*see* Third Amended Compl. ¶ 16), but rather, argues that NJEIT and DEP should be considered an "integrated enterprise" in order to satisfy the statute's definition of employer.  (Pl's Opp. at 11, ¶ 26.)

In *Nesbit v. Gears Unlimited, Inc.*, the Third Circuit set out the framework for determining whether two nominally distinct entities should be considered one for Title VII purposes.  347 F.3d 72, 85 (2003).  A company and its affiliates should be considered a single employer under Title VII (1) "when a company has split itself into entities with less than fifteen employees intending to evade Title VII's reach; or (2) when a parent company has directed the subsidiary's discriminatory act of which the plaintiff is complaining;" or (3) "when the entities' affairs are so interconnected that they collectively caused the alleged discriminatory employment practice."  *Id.* at 85-86.

Here, there is no evidence to support situation (1) or (2), and Plaintiff's primary argument is that the DEP provides NJEIT with personnel, payroll and financial services as well as labor relations.  (Pl's Opp. at 11.)  With respect to situation (3), so-called "substantive consolidation", the Third Circuit explained that the inquiry should focus on "whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another."  347 F.3d at 87.  Relevant factors include:

9

> (1) the degree of unity between the entities
> with respect to ownership, management (both
> directors and officers), and business
> functions (e.g., hiring and personnel
> matters), (2) whether they present themselves
> as a single company such that third parties
> dealt with them as one unit, (3) whether a
> parent company covers the salaries, expenses,
> or losses of its subsidiary, and (4) whether
> one entity does business exclusively with the
> other.

*Id.*

In support of his position, Plaintiff cites to the deposition testimony of Defendant Hart and David Zimmer, current NJEIT Director, as evidence of the integrated nature of the two agencies.  This testimony demonstrates that NJEIT seeks assistance from DEP regarding policy questions on hiring, promotions and paperwork, (Hart Dep. at 23:17-21, Pl's Ex. 7), and that NJEIT salaries are paid from the Department of Treasury through DEP.  (Zimmer Dep. at 41:8-11, Pl's Ex. 13.)

The Court finds this evidence insufficient to create a genuine issue of material fact as to whether NJEIT and the DEP are "substantively consolidated."  Not only does this evidence fall far short of demonstrating that the two entities "are so united that nominal employees of one company are treated interchangeably with those of another," but it also ignores the fact that NJEIT was established pursuant to a statute, *see* N.J.S.A. 58:11B-1 et seq, providing that "[t]here is established in, *but not of*, the Department of Environmental protection a body

10

corporate and politic, with corporate succession, to be known as
the [NJEIT]." N.J.S.A. 58:11B-4 (emphasis added). Thus, the
Court finds that because NJEIT has only thirteen employees and
substantive consolidation with DEP is not warranted, NJEIT is not
an employer within the meaning of Title VII.

Assuming arguendo that NJEIT is an employer within the
meaning of Title VII, NJEIT is nevertheless entitled to summary
judgment because Plaintiff has failed to present evidence that he
suffered an adverse employment action. An adverse employment
action is "a significant change in employment status, such as
hiring, firing, failing to promote, reassignment with
significantly different responsibilities, or a decision causing a
significant change in benefits." *Durham life Ins. Co. v. Evans*,
166 F.3d 139, 152-53 (3d Cir. 1999)(quoting *Burlington
Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). An
adverse employment action may also be found where an employee's
earning potential has been substantially decreased and a
significant disruption to his working conditions results. *Id.* at
153.

Plaintiff has not alleged that he has been fired, suspended,
demoted, or suffered a loss of pay. Instead, Plaintiff argues
that NJEIT's opposition to his requested reclassification as an

Administrative Analyst 1 is an adverse employment action.[8]  The
Court does not agree.  Pursuant to state regulation, NJEIT is
obligated to ensure that the job titles of its employees match
their job duties.  *See* N.J.A.C. 4A:3-3.4 ("No person shall be . .
. employed under a title not appropriate to the duties to be
performed nor assigned to perform duties other than those
properly pertaining to the assigned title which the employee
holds").  The procedures which NJEIT followed in opposing
Plaintiff's attempted reclassification of his position are set
forth in N.J.A.C. 4A:3-3.9.  It was NJEIT's legal right to oppose
Plaintiff's reclassification pursuant to the procedures set forth
in the New Jersey Administrative Code.  Indeed, it was its
responsibility to ensure proper classification of its employees.

---

[8]  Plaintiff also identifies a series of workplace slights
and petty grievances, including, being ordered to remove a bag he
brought to work for eight years, being followed and yelled at,
being watched in his office and at the copying machines, and
being denied an ergonomically sufficient workstation.  These
allegations, taken individually or collectively, do not
constitute an adverse employment action.  *See, e.g.*, *Clayton v.
Pennsylvania Dept. of Welfare*, 304 Fed. Appx. 104, 106-07 (3d
Cir. 2008)(plaintiff's complaints of reduced on-call time, threat
of furlough, change of work schedule, moved mailbox, denied
bonus, removal of furniture from office, and failure to timely
respond to grievances did not amount to adverse employment
action); *Nagel v. RMA*, 513 F.Supp. 2d 383, 391 (E.D.Pa.
2007)(heated meeting with supervisor who made performance
criticisms followed by tense and uncomfortable working
environment is not adverse employment action); *Mihalko v. Potter*,
2003 WL 23319594, at *2,6 (W.D.Pa. Dec. 12, 2003)(denying leave,
issuing warnings, monitoring plaintiff at work, forcing plaintiff
to work in unheated room, ordering other employees not to speak
to plaintiff do not amount to adverse employment actions).

The proper exercise of a legal right to discharge a legal obligation plainly cannot form the basis of an adverse employment action.  *See Flint v. City of Phila.*, 1998 WL 480849, at *5 (E.D.Pa. August 12, 1998)(holding that taking an appeal from an arbitration award is a legal right which is not an adverse employment action for the purposes of Title VII).

Accordingly, summary judgment will be granted to NJEIT on Plaintiff's Title VII claim.

**B.**

Count Two of Plaintiff's Third Amended Complaint asserts a claim against the Individual Defendants pursuant to 42 U.S.C. § 1983 for an alleged denial of equal protection under the Fourteenth Amendment of the United States Constitution.[9] Plaintiff alleges that the Individual Defendants violated his constitutional rights by failing to promote him or recommend that his civil service title be reclassified, and by intentionally

---

[9]  Section 1983 provides:

>    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

13

denying him other unspecified employment opportunities.  (Third Amended Compl. ¶ 70.)

In support of their Motion for Summary Judgment, the Individual Defendants argue that (1) Plaintiff cannot establish that he was treated differently than similarly situated employees; (2) Plaintiff has offered no evidence of purposeful discrimination; and (3) the Individual Defendants have proffered numerous non-discriminatory reasons for opposing Plaintiff's reclassification to Administrative Analyst 1.

To state a claim for denial of equal protection under the Fourteenth Amendment, a plaintiff must prove that he is a member of a protected class and that he was treated differently than similarly situated members of an unprotected class.  *See Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990).  Here, the basis of Plaintiff's equal protection claim is the Individual Defendants' opposition to his requested reclassification from the clerical position of AA2 to the management position of Administrative Analyst 1[10]  Plaintiff makes two arguments in support of his equal protection claim.  First, Plaintiff argues that he was more qualified to assume the additional duties that were assigned to white NJEIT employees, which ultimately led to their promotion or reclassification.  Second, Plaintiff argues

---

[10]  It appears from the record that only Defendant Scangarella participated in opposing Plaintiff's reclassification.

that NJEIT required him to seek a desk audit for a
reclassification whereas white employees obtained promotions or
reclassifications without having to go through the desk audit
process.

Plaintiff has failed to come forth with sufficient evidence
to sustain an equal protection claim on either of these theories.
As to the assignment of additional duties, Plaintiff has not
presented any evidence that he was similarly situated to the
white employees that were assigned the duties.  The record does
not include any of their personnel files, resumes, or other
evidence to support an inference that Plaintiff was equally
qualified to assume the additional duties.  Moreover, the
employees identified by Plaintiff had vastly different job
titles.  Defendant Scangarello was NJEIT's Chief Operating
Officer.  John Laurita had a managerial title and was
reclassified to a higher managerial title, whereas Plaintiff had
a clerical title and was seeking reclassification to a managerial
title.  Indeed, Plaintiff could not identify any NJEIT employee
with a clerical-title who was promoted to a management title.
(*See* Pl's Opp. to Ind. Defs' 56.1 Stat. ¶ 27.)

Second, Plaintiff's own admissions belie his argument that
he was required to seek a desk audit for reclassification while
white employees were not.  Not only has Plaintiff admitted that
Defendant Scangarella offered him an alternative to a desk audit,

15

which Plaintiff admittedly declined, but Plaintiff also acknowledges that Mary Claire D'Andrea, a white employee, sought a desk audit for reclassification.[11]  (*See* Yi Cert. Ex. B, 75:7-76:5.)

Accordingly, the Individual Defendants' Motion for Summary Judgment will be granted.

**IV.**

For the reasons stated above, the Motions for Summary Judgment filed by NJEIT and the Individual Defendants will be granted.  An appropriate Order accompanies this Opinion.

Dated: May __29__ , 2012

                                    __s/Joseph E. Irenas__
                                    **JOSEPH E. IRENAS, S.U.S.D.J.**

---

[11]   To the extent that Plaintiff contends that Defendant Scangarella's opposition to the outcome of his desk audit is the basis for his equal protection claim, this argument also fails for lack of evidentiary support.  First, Defendant Hart testified that he did not recommend that Mary Claire D'Andrea receive reclassification. (*See* Yi Cert. Ex. E, 29:5-9.)  Second, the opposition to a desk audit is a legal right afforded to NJEIT pursuant to the New Jersey Administrative Code, *see supra* III.A., and there is no evidence in the record to support an inference that it was exercised for the purpose of discrimination against Plaintiff.